**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NYDIA ROSARIO | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 26-276 |
| | : | |
| LIBERTY MUTUAL PERSONAL | : | |
| INSURANCE COMPANY | : | |

## MEMORANDUM

KEARNEY, J.                                                February 13, 2026

An injured person suing her car insurer for not paying her benefits under her insurance policy may believe her insurer is also acting in bad faith in resolving her insurance claim. But a breach of contract is not bad faith. The injured person must plead more than conclusions of bad faith. The injured person must plead specific facts known to her or await discovery and amend if warranted. We today dismiss an injured person's statutory bad faith claim against her insurer and strike three conclusory allegations relating only to her pleaded (but now dismissed) statutory bad faith. We dismiss the claim and allegations without prejudice to amend her complaint after adducing discovery affording her an ability to plead facts beyond legal conclusions and to plead an alternative contract theory of bad faith outside of the Pennsylvania statute if warranted by the facts. We also note the insurer's counsel's inaccuracies in briefing with a warning and notice requirement expecting we will not see these errors again from counsel or his law firm.

### I.    Alleged Facts

Philadelphian Nydia Rosario purchased an insurance policy from Liberty Mutual Personal Insurance Company providing up to fifty thousand dollars in underinsured motorist insurance coverage. for her should she be in a car accident in January 2024.[1] Ms. Rosario drove her insured car on January 12, 2024 when non-party Edith Brown drove into Ms. Rosario's car.[2]

Ms. Rosario suffered severe and permanent bodily injury.[3] Ms. Brown's insurance policy provided her with a total of fifteen thousand dollars in coverage.[4] Ms. Rosario settled her claim against Ms. Brown for fifteen thousand dollars.[5] Liberty Mutual consented to the settlement with Ms. Brown.[6]

Ms. Rosario forwarded a complete packet of her medical information to Liberty Mutual seeking underinsured motorist benefits up to her policy limit of fifty thousand dollars.[7] Ms. Rosario did not plead when she sent this information to Liberty Mutual. Her insurer to date has not settled Ms. Rosario's underinsured motorist claim.[8]

## II.    Analysis

Ms. Rosario sued her insurer Liberty Mutual for breach of contract in not paying her the underinsured motorist benefits up to the policy limits.[9]

Ms. Rosario also claims Liberty Mutual violated a Pennsylvania statute by acting in bad faith in not making an offer or paying  underinsured motorist benefits.[10] She concludes Liberty Mutual refused to fairly evaluate her claim or make a good faith settlement offer.[11] She further alleges someone from Liberty Mutual misrepresented undisclosed facts to her regarding the insurer's evaluation of the claim.[12] She alleges Liberty Mutual engaged in outrageous, intentional, reckless, malicious, or negligent acts in not making an offer or not making payments and undisclosed representations by Preston Kidd and Dustin Dodd at undisclosed times.[13]

Liberty Mutual moves to dismiss Ms. Rosario's bad faith claim and to strike three conclusory fact allegations possibly relating to her bad faith claim.[14] Ms. Rosario counters she alleges sufficient facts to support her bad faith claim and her three challenged allegations are relevant to the breach of contract claim.[15] We agree with Liberty Mutual and dismiss the statutory bad faith claim.[16]

### A.     We dismiss the conclusory statutory bad faith claim without prejudice.

Ms. Rosario alleges Liberty Mutual acted in bad faith under a specific Pennsylvania statute.[17] Liberty Mutual moves to dismiss Ms. Rosario's statutory bad faith claim for not pleading facts beyond conclusory general allegations without specificity. Liberty Mutual argues Ms. Rosario points to "misrepresentations" without identifying the misrepresentations.[18] Liberty Mutual further describes the settlement offer Ms. Rosario rejected before filing suit filed.[19] Ms. Rosario now confirms the offer and she rejected the offer.[20] Ms. Rosario counters her limited allegations are sufficient to support her statutory bad faith claim.[21] We agree with Liberty Mutual.

The Pennsylvania General Assembly did not define "bad faith."[22] But the Pennsylvania Supreme Court defines bad faith as "frivolous or unfounded refusal to pay proceeds of a policy[.]"[23] To prevail on a statutory bad faith claim, Ms. Rosario must show by clear and convincing evidence: (1) Liberty Mutual "had no reasonable basis" for denying policy benefits, and (2) Liberty Mutual "knew or recklessly disregarded its lack of reasonable basis in denying the claim."[24] Bad faith is not limited only to the denial of coverage; it "may also include a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, [] failure to promptly acknowledge or act on claims," "poor claims-handling," "failure to act with diligence or respond to the insured, scattershot investigation, and similar conduct."[25]

Ms. Rosario must plead specific facts to allege bad faith under the Pennsylvania General Assembly's bad faith statute and cannot rely on conclusory statements and "bare-bones allegations."[26] Ms. Rosario must allege the "who, what, where, when, and how the alleged bad faith conduct occurred."[27]

Ms. Rosario alleges Liberty Mutual agent or employee Preston Kidd engaged in "outrageous, intentional, reckless, malicious and/or negligent" conduct by "making misrepresentations," "failing to make any offer," or "failing to make any payments."[28] Ms. Rosario further pleads Liberty Mutual agent or employee Dustin Dodd "made misrepresentations concerning the underinsured motorist claims."[29] Ms. Rosario's allegations allow us to reasonably infer who committed the alleged wrongs: Preston Kidd and Dustin Dodd. Ms. Rosario does not plead what, where, when, or how Preston Kidd and Dustin Dodd acted in bad faith. We cannot plausibly infer Liberty Mutual acted in statutory bad faith based on the pleaded facts.

Ms. Rosario also alleges Liberty Mutual refused to fairly evaluate her underinsured motorist claim and made misrepresentations regarding its evaluation of her claim.[30] Ms. Rosario further alleges Liberty Mutual has not justified "its failure to make any offer" or "payments" to her under the provisions of the policy.[31] These are conclusions, not facts. Ms. Rosario must do more than allege Liberty Mutual acted unfairly; she must describe with specificity how Liberty Mutual lacked a reasonable basis for denying her benefits and knew or recklessly disregarded the lack of a reasonable basis.[32] Ms. Rosario must also allege facts beyond the amount of Liberty Mutual's settlement offer to state a claim for statutory bad faith.[33]

We dismiss Ms. Rosario's statutory bad faith claim without prejudice.

> **B.    We strike the conclusory allegations at paragraphs 15-17 of the Complaint without prejudice as entirely related to the dismissed statutory bad faith claim.**

Liberty Mutual moves to strike Ms. Rosario's allegations at paragraphs 15, 16, and 17, which offer conclusory allegations Liberty Mutual refused to fairly evaluate the underinsured motorist claim, did not make a good faith settlement offer, and made misrepresentations which have no basis in the pleaded breach of contract claim.[34] Ms. Rosario counters it would be unfair to strike her claim at this early stage because these allegations are relevant to Liberty Mutual's

4

contractual duties.[35] She may be right as a matter of contract law if she pleaded a breach of contract under an implied oovenant of good faith. But Ms. Rosario did not plead Liberty Mutual breached their insurance contract by this conduct.  She alleges failure to pay her benefits is the breach of contract. We agree with Liberty Mutual based on the present pleaded breach of contract claim We strike paragraphs 15, 16, and 17 from Ms. Rosario's Complaint without prejudice.

We "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[36] We disfavor motions to strike.[37] The standard is "strict" and we only strike allegations from Ms. Rosario's claims which are so unrelated to her remaining claims as to be "unworthy of any consideration."[38] Labeling an allegation "immaterial" means finding it has "no essential or important relationship to the claim for relief."[39]

Ms. Rosario's only remaining claim is her breach of contract claim because Liberty Mutual did not pay her claim.  She does not allege breach of contract through breach of an implied covenant of good faith and fair dealing.  A breach of contract claim under Pennsylvania law requires Ms. Rosario to show: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages."[40] A breach of the contract is "the nonperformance of a duty imposed by a contract between parties."[41]

Ms. Rosario's allegations in paragraphs 15, 16, and 17 are immaterial to her breach of contract claim for two reasons. First, Ms. Rosario does not allege facts in paragraphs 15, 16, or 17 to support an element of a breach of contract claim. Second, Ms. Rosario has not argued how the allegations in paragraphs 15, 16, or 17 are relevant to her contract claim beyond a conclusory statement they are relevant.[42] Ms. Rosario does not allege facts establishing the existence of her contract with Liberty Mutual nor its essential terms in paragraphs 15, 16, or 17. Nor does she

allege the nonperformance of a specific contractual duty by Liberty Mutual in paragraphs 15, 16, or 17. Ms. Rosario also does not allege resultant damages in these paragraphs.

We find paragraphs 15, 16, and 17 are unrelated and immaterial to the elements of Ms. Rosario's breach of contract claim. We strike paragraphs 15, 16, and 17 without prejudice.

### III.    Conclusion

Ms. Rosario does not plead facts allowing us to plausibly infer an insurer's bad faith claim under Pennsylvania law. We dismiss her bad faith claim without prejudice to amend should Ms. Rosario discover facts allowing her to proceed on her bad faith claim consistent with Rule 11. We strike Ms. Rosario's conclusory allegations at paragraphs 15, 16, and 17 as entirely unrelated to her breach of contract claim without prejudice.

---

[1] ECF 1-5 ¶¶ 1, 3, 10–12.

[2] *Id.* ¶¶ 3–4. Ms. Rosario pleaded she drove the car and did not drive the car. *Id.* ¶¶ 3, 5, 10. It cannot be both.

[3] *Id.* ¶ 6.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 8.

[6] *Id.* ¶ 9.

[7] *Id.* ¶ 14.

[8] *Id.* ¶ 24.

[9] *Id.* ¶¶ 18–24.

[10] *Id.* ¶¶ 25–33.

[11] *Id.* ¶¶ 15–16.

[12] *Id.* ¶ 17.

[13] *Id.* ¶¶ 27, 31. Ms. Rosario also now concedes her insurer offered her a settlement. ECF 15 ¶ 14.

Ms. Rosario further claimed Liberty Mutual violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law. ECF 1-5 ¶¶ 34–39 (citing 73 Pa. C.S.A § 201-1 *et seq*.). Ms. Rosario and Liberty Mutual stipulated to the voluntarily dismissal of Ms. Rosario's unfair trade practices claim. ECF 13. We dismissed her unfair trade practices claim without prejudice. ECF 14.

[14] ECF 12. Liberty Mutual moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibility' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that …'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[15] ECF 15-1 at 5–8.

[16] Trial counsel and judges increasingly work under a risk of miscitations or unsupported arguments patched from artificial intelligence favored by many lawyers. We have no reason to today find the abuse of artificial intelligence research. We instead see old-fashioned lack of diligence.

Counsel is professionally obligated (compounded by risk to their and their law firm's reputations) to be diligent in ensuring the accuracy of citations and quotations in briefing submitted to us and our colleagues. Experienced federal lawyers know our talented lawyers in Chambers study their work product to advise the judges. And these Chambers's lawyers are unfairly burdened in a busy urban federal court docket. We rely on counsel to present accurate citations.

Liberty Mutual's legal citations contain incorrect reporter volume numbers, incorrect pincites, and misquoted language in the Brief in support of its renewed Motion to dismiss Count II. *See* ECF 12-1. By way of limited example, counsel:

- Quotes *Kiessling v. State Farm Mut. Auto. Ins. Co.,* No. 18-4281, 2019 WL 634639 (E.D. Pa. Feb. 14, 2019) for the proposition conclusory allegations "must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss." *See* ECF 12-1 at 4. But Judge Slomsky in *Kiessling* quotes our Court of Appeals's Rule 12(b)(6) framework from *Santiago v. Warminster Twp.* and this language does not exist in *Santiago*. 629 F.3d at 130.

- States the incorrect reporter volume when citing *Smith v. State Farm Auto. Ins. Co.*, 506 F. App'x 133 (3d Cir. 2012). Counsel wrote 56 instead of 506. *See* ECF 12-1 at 7. The cite at 56 F. App'x 133 is to *United States v. Lutz*, a three-paragraph opinion from the Court of Appeals for the Fourth Circuit dismissing an appeal for lack of jurisdiction.

- Provides an incorrect pincite when citing "*Jones v. Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS 93673, at *2-3 (E.D. Pa. 2017)" as "Id. [sic] at *2-3." *See* ECF 12-1 at 8. It appears counsel relies on the Lexis unreported case identifier but the Westlaw pincite locator. The quoted language appears at *5 in 2017 U.S. Dist. LEXIS 93673 (E.D. Pa. June 19, 2017) and at *2-3 in 2017 WL 2633472 (E.D. Pa. June 19, 2017).

- Repeatedly omitting required pincites, failing to provide complete electronic report numbers, misidentifying case captions, and reproducing verbatim language without quotation marks. *See* ECF 12-1 at 10–12 (citing "*Zaloga v. Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623 (M.D. Pa. 2009)" twice without a pincite and quoting the opinion's language without quotation marks; citing "*Hoffer v. Grane Ins. Co.,* 2014 U.S. Dist. LEXIS (M.D. Pa. 2014)" without including the complete electronic report number or pincite and again reproducing language from the opinion without quotation marks; quoting "*Stepanovich v. State Farm*, No. 1239 WDA 2012, 1296 WDA 2012 (Pa. Super. Oct. 15, 2013)" without providing a reporter citation, an electronic database citation, or a pincite to the quoted language and misidentifying the case caption; citing "*Schwendinger-Roy v. State Farm Mut. Auto. Ins. Co.,* No. 11-CIV-445 (W.D. Pa. July 10, 2012)" without providing an electronic report number; quoting *Wagner v. State Farm Mut. Auto. Ins. Co.,* 2014 U.S. Dist. LEXIS 194554 (E.D. Pa. Feb. 20, 2014) without providing a pin cite).

More concerning is Liberty Mutual's counsel may have copy-and-pasted many of these miscitations and inaccurate quotations from memoranda he filed supporting motions to dismiss before our colleagues. *See, e.g, Tsirikis-Brown v. Liberty Mut. Ins.*, No. 25-5165 (E.D. Pa. Sept. 15, 2025), ECF 12-1; *Blazejewski v. Liberty Mut. Ins. Co.*, No. 25-990 (E.D. Pa. Apr. 10, 2025), ECF 12; *Giraldo v. Liberty Mut. Gen. Ins. Co.*, No. 24-5286 (E.D. Pa. Oct. 9, 2024), ECF 3.

We defer entering a monetary or educational sanction today. But we direct Liberty Mutual's counsel to share this Memorandum with his law firm colleagues so they can be on notice should we see a repeat of these errors in future briefing including errors copied from those earlier

presented to our colleagues. Law firms of considerable renown work hard to ensure their reputations for candor and professionalism. We hope to ensure Liberty Mutual's counsel can honor the hard work of his colleagues by sharing these lessons among all first-year litigation associates and all colleagues representing clients facing bad faith insurer claims and by confirming he advised his colleagues.

[17] ECF 1-5 ¶ 26 (citing 42 Pa. C.S.A. § 8371 (1990)).

[18] ECF 12-1 at 6.

[19] *Id.* at n.2; ECF 12 ¶ 14.

[20] ECF 15 ¶ 14.

[21] ECF 15-1 at 5–7.

[22] *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015).

[23] *Borden v. NGM Ins. Co.*, 660 F. Supp. 3d 322, 329 (E.D. Pa. 2023) (citing *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 373 (Pa. 2017)), *appeal dismissed*, *Borden v. 6 Ins. Co.*, No. 23-1622, 2023 WL 6446209 (3d Cir. July 13, 2023)).

[24] *Berg v. Nationwide Mut. Ins. Co., Inc.*, 235 A.3d 1223, 1232 (Pa. 2020) (quoting *Rancosky*, 170 A.3d at 377).

[25] *Peltz v. State Farm Mut. Auto. Ins. Co.*, 538 F. Supp. 3d 498, 509 (W.D. Pa. 2021) (quoting *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 154–55 (W.D. Pa. 2019), *reconsideration denied*, No. 18-153, 2020 WL 376994 (W.D. Pa. Jan. 23, 2020)).

[26] *Barbor v. State Farm Fire and Cas. Co.*, No. 24-521, 2024 WL 3678660, at *4–5 (E.D. Pa. Aug. 6, 2024) (citations omitted).

[27] *Id.* at *6 (citation omitted).

[28] ECF 1-5 ¶ 27.

[29] *Id.* ¶ 31.

[30] *Id.* ¶¶ 15, 17.

[31] *Id.* ¶ 30. Ms. Rosario later clarified Liberty Mutual made a settlement offer before she filed her suit but alleges Liberty Mutual made the offer in bad faith. ECF 15 ¶ 14.

[32] *Carolan v. Progressive Advanced Ins. Co.*, No. 24-3248, 2025 WL 777708, at *5–7 (E.D. Pa. Mar. 11, 2025) (collecting cases).

[33] "To state a bad faith claim, an insured 'must do more than call [the insurer's] offers low-ball.'" *Brown v. LM Gen. Ins. Co.*, No. 21-2134, 2021 WL 3809075, at *3 (E.D. Pa. Aug. 26, 2021)

(alterations in original) (quoting *Canfield v. Amica Mut. Ins. Co.*, No. 20-2794, 2020 WL 5878261, at *4 (E.D. Pa. Oct. 2, 2020) (the insured's "subjective belief as to the value of her claims is not indicative of bad faith")).

[34] ECF 12-1 at 10–13. Liberty Mutual moves to strike the following paragraphs from Ms. Rosario's Complaint:

> 15. Defendant has refused to fairly evaluate Plaintiffs underinsured motorist claim.
>
> 16. Defendant has refused to make a good-faith settlement offer to resolve Plaintiff's underinsured motorist claim.
>
> 17. Defendant has made misrepresentations to Plaintiff regarding its evaluation of Plaintiff's underinsured motorist claim.

*Id.* at 11 (citing ECF 1-5 ¶¶ 15–17).

[35] ECF 15-1 at 7–9.

[36] Fed. R. Civ. P. 12(f).

[37] *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

[38] *Sullivan v. Warminster Twp.*, No. 07-4447, 2010 WL 2164520, at *11 (E.D. Pa. May 27, 2010).

[39] *Id.* (quoting *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291–92 (D. Del. 1995) (citation omitted)).

[40] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[41] *Grudowski v. Foremost Ins. Co.*, 556 F. App'x 165, 168 (3d Cir. 2014) (quoting *Widmer Eng'g, Inv. v. Dufalla*, 837 A.2d 459, 467–68 (Pa. Super. Ct. 2003)).

[42] ECF 15-1 at 8 ("The factual averments contained in Paragraphs 15, 16, and 17 of Plaintiff's Complaint are relevant to Defendant's breach of contractual duties to Plaintiff. Therefore, Plaintiff has pled facts that demonstrate Defendant's failure to afford a fair evaluation of Plaintiff's claim, misrepresentations regarding said evaluation, and refusal to make a good-faith offer.").